UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| PRODUCE PAY, INC., | Case No. 2:16-CV-2451 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| PRODUCERS INTERNATIONAL, INC., | |
| Defendant(s). | |

Presently before the court is plaintiff Produce Pay, Inc.'s motion for attorneys' fees. (ECF No. 22). Defendants Producers International, Inc. d/b/a Producers Fruit and Vegetable (the "company") and Eduardo Reyes (the "principal," and collectively, the "defendants") have not filed a response, and the time for doing so has since passed.

**I.  Facts**

This is an action for breach of contract and violation of the Perishable Agricultural Commodities Act ("PACA") arising out of defendants' failure to pay for mangoes subject to PACA protection, which defendants purchased from plaintiff. (ECF Nos. 1, 17, 20).

On October 20, 2016, plaintiff filed its complaint. (ECF No. 1). Defendants neither appeared nor filed an answer to the complaint. (ECF No. 17). Plaintiff subsequently filed an application for entry of default judgment against defendants on August 3, 2017, which the court granted on March 14, 2018. *Id.*; (ECF No. 20).

**II.  Discussion**

Plaintiff requests the court grant its motion for attorneys' fees against defendants, individually, and joint and severally, in the amount of $40,682.25. (ECF No. 22).

### a. Plaintiff is entitled to recover under the UCC

PACA allows for the recovery of attorneys' fees as "sums owing in connection with" perishable commodities transactions under PACA. *See* 7 U.S.C. § 499e(c)(2) (2010); *see also Middle Mountain Land & Produce v. Sound Commodities*, 307 F.3d 1220, 1222–25 (9th Cir. 2002). In produce transactions, the prevailing party has a contractual right to recover attorneys' fees and collection costs where such additional terms are included in an enforceable contract created by the invoices related to the transaction. U.C.C. § 2-207 (2002); *Coosemans Specialties, Inc. v. Gargiulo*, 485 F.3d 701, 709 (2d Cir. 2007).

Pursuant to section 2-207 of the UCC, additional terms stated on the face of invoices relating to a produce transaction are binding upon the parties to the transaction. *Diamond Fruit Growers, Inc. v. Krack Corp.*, 794 F.2d 1440, 1443-45 (9th Cir. 1986). Generally, under section 2-207, acceptance of terms that are additional to the original terms of an offer are treated as counteroffers, and operate as a rejection of the original offer. U.C.C. § 2-207 (2002). However, between merchants, the additional terms become part of the contract unless (i) acceptance is expressly limited to the terms of the original offer, (ii) the additional terms are objected to within commercially reasonable time, or (iii) the additional terms materially alter the terms of the contract. U.C.C. § 2-207(2) (2002); *see also Diamond Fruit Growers, Inc.*, 794 F.2d at 1443-45.

In this case, the defendants' offer to buy was not expressly limited to its terms, and the defendants did not object within a commercially reasonable time. *Id.*; (ECF Nos. 1, 17, 21, 22). Thus, the only issue is whether the "additional terms" materially altered the terms of the contract. *Id.*

In defining the types of additional terms that could "materially alter" the existing contract, the UCC looks for provisions which would "result in surprise or hardship if incorporated without express awareness by the other party[.]" Official Comment 4 to U.C.C. § 2-207 (2002). The official comments to this UCC provision expressly state:

> Examples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are: . . . a clause providing for interest on overdue invoices or fixing the seller's standard credit terms . . .

> If no answer is received within a reasonable time after additional terms are proposed, it is both fair and commercially sound to assume that their inclusion has been assented to.

*See* Official Comments 5 & 6 to U.C.C. § 2-207 (2002).

Here, under the UCC, the additional terms on the face of each of the plaintiff's invoices became agreed upon terms of the parties' contracts. The terms regarding attorneys' fees and collection costs on the face of the invoices are the plaintiff's standard credit terms upon which the plaintiff sells goods to any purchaser. (ECF Nos. 1, 17, 21, 22). These terms are standard contract terms throughout the produce industry and are generally expected to be present on invoices or other billing statements. *Id.* Given the general inclusion of these terms throughout the industry and plaintiff's regular use of the additional terms on its invoices, the additional terms regarding attorneys' fees and costs did not materially alter the existing contracts. *Diamond Fruit Growers, Inc.*, 794 F.2d at 1443-45.

Further, defendants never objected to the additional terms when they received and accepted the produce identified on the unpaid invoices. *Id.* As a result, the amounts due under these additional provisions became a part of the plaintiff's PACA trust claim as sums owing in connection with the produce transactions between the plaintiff and the defendants by virtue of 7 U.S.C. § 499e(c)(2) (2010) (trust survives until debtor makes "full payment of the sums owing in connection with such transactions"). Accordingly, plaintiff is entitled to recover under U.C.C. § 2-207.

### b. Plaintiff is entitled to recover under PACA

The Ninth Circuit has held that additional terms included on the face of invoices for the sale of goods are considered terms of the contract. *U.S. ex rel. Hawaiian Rock Prods. Corp. v. A.E. Lopez Enters. Ltd.*, 74 F.3d 972, 976 (9th Cir. 1996). Terms on invoices, including attorneys' fees and costs of collection contained on the face of the invoice, are enforceable as additional terms of contract because they are sums "owing in connection with such transactions," as provided under PACA § 5(c)(2) (2010).

In *Weis-Buy Servs., et al. v. Christopher Ranch, et al.*, 361 F.3d 629, 632 (11th Cir. 2004), the court held as follows:

> Had Congress intended to limit PACA claims solely to the price of the commodities, it could have inserted language reflecting that limitation in 7 U.S.C. § 499e(c)(2). Instead, it chose to allow '*full payment of the sums owing in connection with [commodities] transactions*.' This unambiguously encompasses not only the price of commodities but also additional related expenses. Such related expenses include attorney fees and interest that buyers and sellers have bargained for in their contracts.

*Id*. (italics in original) (citing *Middle Mountain Land & Produce*, 307 F.3d at 1223); *see also Sherman v. Carter*, 353 U.S. 210, 77 S. Ct. 793 (1957) (attorneys' fees encompassed within language allowing recovery of "sums justly due" under Miller Act).

In this case, plaintiff included the following language on the face of invoices received by defendants: "In the event collection action becomes necessary, buyer agrees to pay all costs of collection, including attorneys' fees." (ECF No. 1, Exh. 1). The defendants never objected to the inclusion of these terms creating liability to pay attorneys' fees, or costs of any action relayed to collection of the account balance. *Id*.; (ECF Nos. 1, 17, 21, 22).

Moreover, the additional terms constitute plaintiff's standard credit terms and are prominently included on the face of every invoice plaintiff issues. *Id.* The fact that such terms do not involve any element of surprise means that the additional terms for interest on past due balances, and costs of collection, did not constitute material alterations of the parties' contracts. *Id.;* U.C.C. § 2-207 (2002). Thus, attorneys' fees and costs of collection are agreed upon contractual terms appearing on the face of the plaintiff's invoices, and, for that reason, are enforceable terms of the contract between the parties. *Id.*

### c. Plaintiff's claims under the "lodestar" method

A party seeking attorneys' fees bears the burden of demonstrating that the rates requested are "in line with the prevailing market rate of the relevant community." *Carson v. Billings Police Dep't*, 470 F.3d 889, 891 (9th Cir. 2006) (citation omitted). Generally, "the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (citing *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997)). Typically, "[a]ffidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases...are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

James C. Mahan
U.S. District Judge

The reasonableness of attorneys' fees in the Ninth Circuit is calculated based on a determination known as the "lodestar" method. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). A lodestar determination is a two-step process. First, the total fee amount is calculated by multiplying the number of hours invested in the case by counsel for the prevailing party, multiplied by a reasonable hourly rate. *Id.*; *McGrath v. County of Nev.*, 67 F.3d 248, 252 (9th Cir. 1995). Second, the court must evaluate the reasonableness of the monetary figure on the basis of twelve factors, known in the Ninth Circuit as the *Kerr* factors. *Intel Corp. v. Terabyte Int'l, Inc.*, 6 F.3d 614, 622-23 (9th Cir. 1993).

The court may consider the following *Kerr* factors when determining the reasonableness of the monetary figure produced by the prevailing party: (1) time and labor required by the case; (2) novelty and difficulty of the questions involved; (3) skill required to perform the legal service properly; (4) preclusion of employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether fee is fixed or contingent; (7) time limitations imposed by client or circumstances; (8) amount involved and results obtained; (9) experience, reputation, and ability of attorneys; (10) desirability of the case; (11) nature and length of professional relationship with client; and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 68, 70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951, 96 S. Ct. 1726 (1976) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir. 1974)).

In addition, Local Rule 54-14 identifies these same factors (albeit in a different order) as items that must be included in any motion for attorneys' fees in order for the court to consider the reasonableness of the fees. Fed. R. Civ. P. 54-14(b)(3) (2016). The parties are also required to produce a "reasonable itemization and description of the work performed." Fed. R. Civ. P. 54-14(b)(1) (2016). Finally, the motion must include an affidavit from the attorney responsible for the billing in the case supporting the information in the motion and confirming the attorney appropriately reviewed and edited the bill.[1] Fed. R. Civ. P. 54-14(c) (2016).

. . .

---

[1] Plaintiff met this burden by providing the declarations of plaintiff's attorneys and itemized billing statements. (ECF No. 22).

**James C. Mahan**
**U.S. District Judge**

### i. *Time and labor required*

Although this litigation has been uncontested by defendants, plaintiff's counsel was required to investigate the underlying basis of the claims, perform substantial research, prepare the complaint, and prepare applications for entry of default and default judgment. (ECF Nos. 1, 17, 21, 22, 24). All of the work and time plaintiff invested in this case was necessary to properly obtain a default judgment. *Id.* The hours and activities performed by lead and local counsel are specifically itemized and described in exhibits to the declarations of lead and local counsel. (ECF No. 22). Accordingly, plaintiff's counsels' time and labor expenditures are reasonable in relation to this matter.

### ii. *Novelty and difficulty of questions*

PACA trust law is a fairly unique area of federal law. (ECF Nos. 1, 17, 21, 22, 24). The skills required to litigate a PACA trust claim require specialized knowledge of PACA, USDA regulations, and voluminous case law interpreting the same. *Id.* This matter presented moderately complex questions involving PACA, which required in-depth research, an extensive complaint, and a more complex motion for default judgment than average. *Id.*

### iii. *Requisite skills to perform legal servicess*

Plaintiff's lead and local counsel are skilled in both PACA and commercial litigation matters. (ECF Nos. 1, 17, 21, 22, 24). Plaintiff's lead and local counsel are experienced federal court litigators. (ECF No. 22). Plaintiff's lead counsel focuses a significant amount of his practice on creditor rights under PACA. *Id.* Plaintiff's use of local counsel also reduced the cost of travel related expenses. *Id.*

### iv. *Preclusion of other employment by plaintiff's attorneys*

While neither Plaintiff's lead counsel, nor local counsel, were precluded from accepting other employment, their respective time and resources were predominately consumed in the instant matter through the application for default judgment. (ECF Nos. 1, 17, 21, 22, 24).

### v. *Whether fee is fixed or contingent*

Plaintiff incurred fees on a traditional hourly basis. (ECF No. 22).

### vi. *Time limitations imposed by client or circumstances*

Plaintiff encountered no time limitations that would substantially increase the amount billed in this matter apart from the deadlines set by the court, statute, or local rules. (ECF Nos. 1, 17, 21, 22, 24).

### vii. *The amount involved and results obtained*

The court entered default judgment against defendants in the amount of $374,938.00 in principal, plus pre-judgment interest in the amount of $80,640.85, post-judgment interest accruing at a rate of $130.62 per day, attorneys' fees, and costs. (ECF No. 20). Attorneys' fees of $40,682.25 are reasonable in relation to the amount involved and the successful result obtained by plaintiff's counsel. *Id.;* (ECF No. 22).

### viii. *Experience, reputation, and ability of attorneys*

Both plaintiff's lead counsel and local counsel have extensive experience in federal litigation matters. (ECF No. 22). Jason Klinowski ("Klinowski") is an attorney at Wallace, Jordan, Ratliff & Brandt, L.L.C. ("WJRB"), and serves as plaintiff's lead attorney. *Id.* Klinowski possesses over thirteen years of litigation experience in both state and federal courts, and particularly PACA-related litigation matters. *Id.*

Amanda Yen is a partner at McDonald Carano, LLP ("McDonald Carano"), and possesses over 11 years of litigation experience in both state and federal courts. *Id.* Amanda Perach, also an attorney at McDonald Carano, serves as plaintiff's local counsel, and has almost seven years of litigation experience in both state and federal courts. *Id.* In this case, the plaintiff's lead and local counsel were all sufficiently experienced to handle the delegated tasks in this litigation. *Id.*

### ix. *The desirability of the case*

As this case involved plaintiff's lead counsel's standard area of practice, this case was desirable. *Id.*

### x. *Nature and length of relationship between client and attorney*

Plaintiff has worked with WJRB on previous occasions and has regularly employed the services of Klinowski for its PACA trust enforcement needs for over two years. *Id.*

### xi. *Customary fees for similar work and awards in similar cases*

There is a strong presumption that the lodestar figure constitutes reasonable fees, and only in exceptional cases will adjustment of the lodestar be appropriate. *Sequoia Sales, Inc. v. P.Y. Produce, LLC,* No. CV 10-5757 CW NJV, 2011 WL 3607242, at *8 (N.D. Cal., July 29, 2011), *report and recommendation adopted,* No. C 10-5757 CW, 2011 WL 3595943 (N.D. Cal., Aug. 15, 2011) (citing *Pa. v. Del. Valley Citizens' Council for Clean Air,* 478 U.S. 546, 564–65, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986)). Additionally, the court can rely on its own knowledge and experience in evaluating a request for fees. *Fresh & Best Produce, Inc. v. Spinello's East Coast Eatery*, No. 5:16-CV-06984-HRL, 2017 WL 1435888, at *5 (N.D. Cal., Apr. 24, 2017) (citing *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011) (agreeing that "judges are justified in relying on their own knowledge of customary rates and their experience concerning reasonable and proper fees.")).

Here, plaintiff counsels' billing rates of $175.00 to $403.95 per hour are reasonable given the customary rates charged by similar firms and attorneys in the practice of federal court litigation. *See Greenfield Fresh, Inc. v. Berti Produce-Oakland, Inc.*, No. 14-CV-1096 YGR, 2015 WL 1160584, at *4 (N.D. Cal., Mar. 13, 2015) (where the court awarded a total of $47,830.35 three years ago in attorneys' fees); *Sequoia Sales, Inc. v. P.Y. Produce, LLC,* No. CV 10–5757 CW (NJV), 2011 WL 3607242 at *9 (N.D. Cal., July 29, 2011) (finding that attorneys' fees ranging from $285 to $350 per hour were reasonable seven years ago in a PACA case); *Paramount Citrus Co-op, Inc. v. H & M Produce Inc.,* No. 1:08–cv–01210–AWI–SMS, 2008 WL 4716764 at *5 (E.D. Cal., Oct. 24, 2008) (finding $350 per hour was reasonable for attorneys' fees ten years ago in a PACA case).

WJRB reported that it spent a total of 108.95 hours and charged a total of $31,083.25 for lead counsel's work on this case.[2] (ECF No. 22-3, Exh. A-2). McDonald Carano reported it spent

---

[2] Lead counsel Jason Klinowski's billing rate was $375 per hour in this case. (ECF No. 22, 22-1, 22-3, 22-4, 22-8, 22-9). He asserts that his time on this case amounted to $31,083.25, as submitted in the fee statements and invoices provided by plaintiff in support of their motion for attorneys' fees. *Id.*

a total of 34.5 hours and charged a total of $9,599.00 for local counsel's work on this case.[3] (ECF No. 22-8, Exh. B-4). After reviewing the declarations and accompanying documents submitted by plaintiff's attorneys Klinowski and Yen, the court holds that plaintiff's requested attorneys' fees are reasonable. *Greenfield Fresh, Inc.*, 2015 WL 1160584, at *4; (ECF No 22.).

**III.   Conclusion**

Plaintiff is entitled to recover attorneys' fees and costs of collection pursuant to the enforceable contract terms created by the unpaid invoices.

Accordingly,

IT IS HEREBY ORDERED that plaintiff's motion for attorneys' fees (ECF No. 22) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that plaintiff shall prepare a proposed judgment consistent with the foregoing and submit it to the court within twenty-one (21) days for signature.

DATED July 19, 2018.

                                                                          /s/ James C. Mahan
                                                                          UNITED STATES DISTRICT JUDGE

---

[3] Local counsel, including Amanda Yen ($400 per hour), Amanda Perach ($300-$350 per hour), and Jason Sifers ($235.00 per hour), report that the time they collectively spent on this matter amounted to $9,384.00. *Id.* The remainder of the fees ($215.00) are unbilled paralegal fees for the month of March 2018, which brings the total to $40,682.25. (ECF No. 22-3 at 13)